Filed 9/10/25  In re E.G. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | B341852 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.G.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 22CCJP00699A) |

APPEAL from orders of the Superior Court of Los Angeles County, Kristen Byrdsong.  Affirmed.

Law Office of Michelle Peña and Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

Father appeals from the October 9, 2024 orders denying his petition under Welfare and Institutions Code section 388 and selecting legal guardianship as the permanent plan for minor under section 366.26.[1]  Father's sole contention on appeal is that the juvenile court and the Los Angeles County Department of Children and Family Services (Department) did not comply with their obligations under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (Cal-ICWA) (§ 224 et seq.).  Father contends there was insufficient evidence to support the court's implicit determination that further inquiry and notice requirements were met, because the Department omitted relevant information when it contacted the Blackfeet[2] and Cherokee tribes in March 2022 and again in September 2024.  We conclude the Department satisfied its duty of further inquiry and was not under a duty to provide formal ICWA notice to any tribe.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Father and the Department acknowledge that the record refers interchangeably to the Blackfoot and Blackfeet tribes.  We examine whether the Department's statutory duties were met with respect to the Blackfeet Tribe.  (See *In re L.S.* (2014) 230 Cal.App.4th 1183, 1197–1198 [court and agency had a duty to clarify whether a claim of Blackfoot heritage was a claim of Blackfeet heritage].)

## FACTUAL AND PROCEDURAL BACKGROUND

Our summary focuses on the facts and procedure relevant to father's contention there was insufficient evidence the Department fulfilled its statutory duties of further inquiry and notice under ICWA and Cal-ICWA.

The Department's investigation into the family began after father was arrested for making criminal threats. Initially, neither mother nor father gave any reason to believe minor was an Indian child. When asked about her ethnicity, mother simply stated "I am human." The Department later learned mother's family was from Nicaragua.

In a March 2022 interview, father reported possible Blackfeet and Cherokee Native American ancestry on his mother's side of the family, meaning paternal grandmother (PGM). Father did not have any additional information, but advised the social worker to call PGM. PGM provided her date of birth, and stated her own great-grandparents—meaning minor's paternal great-great-great-grandparents—possibly had Cherokee and Blackfeet ancestry. She did not know if any relatives were enrolled members or received tribal benefits, nor did she have the names of any other relatives who might have more information. PGM was unable to provide any information as to her great-grandparents at the time of the call, but reported she would try and locate some family documents and provide them at a later time. A few days later, PGM texted the social worker: "I have not located documents to verify [my great-grandfather's] birthdate or birthplace. His birth into the Blackfoot tribe was not written at that time. We practiced tradition and rituals that were passed down through generations of verbal communication,

3

passed on from our ancestors to us, not knowing their origin and certainly not question their meaning.  I will continue to search." She provided the Department with her great-grandmother's birth and death dates; her great-grandfather's death date; photos of family reunion programs from 1992 and 2004, including several names on the family tree; a photo of a document titled "Our Family Roots," listing her great-grandmother and great-grandfather and their descendants; and several photos of relatives.

In mid-March 2022, the Department sent by certified mail the ICWA-030 Notice of Child Custody Proceeding for Indian Child forms (ICWA-030 Notices) to the Secretary of the Interior, the Bureau of Indian Affairs, and four tribes (the Blackfeet Tribe of Montana, the Cherokee Nation, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians in Oklahoma).  The ICWA-030 Notices included PGM's name and her date and place of birth, but no information about PGM's great-grandparents or any other paternal relatives.  On March 23, 2022, after the ICWA-030 Notices had been mailed out, father filed an ICWA-020 form asserting that PGM was a member of the Cherokee tribe, and that U.W. was a member of the Blackfoot tribe.  The form did not provide any detail on the nature of U.W.'s relationship to father.

In April and May 2022, each of the noticed tribes responded that minor was not an Indian child for that tribe, either because minor's name did not appear in tribal records or because she was not eligible to register with the tribe.  None of the responding tribes asked for additional information.  The Bureau of Indian Affairs responded that it would make a reasonable attempt to

4

identify the child's tribe.  The Department received a certified mail receipt for the notice sent to the Secretary of the Interior.

In response to a request by the Department at a combined jurisdiction and disposition hearing conducted almost a full year later in March 2023, the juvenile court found no reason to believe ICWA applied.  Mother and father both appealed the court's jurisdiction and disposition orders, but the appeals were dismissed under *In re Phoenix H.* (2009) 47 Cal.4th 835.  PGM became minor's caregiver in June 2023, and remained so until the end of the case.

In January 2024, the juvenile court entered an attorney order directing mother and father to provide the Department contact information for relatives and directing the Department to interview "all known and available extended family members" about whether minor was or may be an Indian child, document its efforts, and file a written report before the next scheduled review hearing.  The Department's April 2024 status review report stated that father told the Department to ask PGM about Indian ancestry, and that PGM reported " 'I know we have ancestors that were a[ ]part of Blackfoot Tribe, but they are all deceased so I have no further information.  I have no information that we are a part of the tribe and I have never registered for the tribe.' "  Nevertheless, the court ordered the Department to "follow up regarding possible Native American or Indian ancestry, via the Blackfoot tribe."

Department social workers revisited the question of possible Indian ancestry in June and July of 2024.  Father again directed the social workers to PGM, who reported hearing family say they may have Blackfoot tribe, but since the relatives were deceased, she had no additional information.  The social worker

5

was unable to reach mother by phone to ask her about Indian ancestry, but two maternal aunts denied any such ancestry.

At a permanency planning hearing in August 2024, minor's counsel asked the court to consider ordering notice to the Blackfoot tribe, based on PGM providing to minor's counsel the name of paternal grandfather. County counsel stated there was no objection to notice being sent to the Blackfoot Tribe. The juvenile court ordered the Department "to notice the Blackfoot Tribe given the new information" and to submit a last minute information with any responses. PGM again reported to the Department that the Native American ancestry came from her great-great-grandfather, W.A., but she did not have his date of birth. The Department mailed a second ICWA-030 Notice to the Blackfeet Tribe in September 2024, identifying minor, mother, father, and PGM. The notice also included the information from PGM that she had learned the family's Indian ancestry came from her W.A., but she did not have his date of birth. A social worker spoke with an enrollment liaison from the Blackfeet Tribe, who stated that PGM, father, and minor were not enrolled or eligible for enrollment.

At a permanency planning hearing on October 9, 2024, over father's objection, the court appointed PGM as minor's legal guardian and terminated its dependency jurisdiction. Although the court did not make an express ICWA finding, it also did not check any of the boxes on the legal guardianship form indicating that minor was an Indian child or that there was reason to know minor was an Indian child. Father filed a timely notice of appeal.

6

# DISCUSSION

## A. Relevant Law

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129 (*Dezi C.*); see also *In re A.W.* (2019) 38 Cal.App.5th 655, 662 [ICWA "protects the interests of Indian children and promotes the stability and security of Indian tribes" by setting minimum standards and permitting tribal participation in dependency proceedings].) ICWA and Cal-ICWA establish three distinct duties designed to assess whether a child in a dependency action is an Indian child, and hence a child who should not be separated from their tribal family through adoption or foster care placement. (§§ 224.2, 224.3; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*); *Miss. Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.) "First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that

7

the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*D.S., supra*, 46 Cal.App.5th at p. 1052.)

To satisfy its initial inquiry duties, the Department must "interview, among others, extended family members and others who had an interest in the child." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see § 224.2, subd. (b).) This duty includes making a meaningful effort to interview available relatives (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552–553), but it does not include a duty to search for all possible extended relatives (*In re Levi U.* (2000) 78 Cal.App.4th 191, 199 [child protective agency is not required to conduct an extensive independent investigation or to "cast about" for investigative leads]; see also *In re H.B.* (2023) 92 Cal.App.5th 711, 721 [where "representatives from both sides of two generational levels" of minor's family denied Indian ancestry, but not every extended relative was contacted, ICWA determination supported by substantial evidence]).

If further inquiry is necessary because there is reason to believe a child is an Indian child, the child services agency "must satisfy three requirements. First, the Agency must interview the parents, Indian custodian, and extended family members to gather relevant information, specified by statute, regarding the details of the child's birth, family members, and possible tribal affiliations. (§ 224.2, subd. (e)(1); see also § 224.3, subd. (a)(5).) Second, the Agency must contact 'the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in,

and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility.' (§ 224.2, subd. (e)(2).) Third, the Agency must contact 'the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (*Id.*, subd. (e)(3).) The Agency's contact with the tribe 'shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.' (*Ibid.*)" (*D.S., supra,* 46 Cal.App.5th at pp. 1052–1053.)

"[F]ormal notice is only required where there is reason to know an Indian child is involved (§ 224.3, subd. (a))." (*In re P.H., Jr.* (2024) 98 Cal.App.5th 992, 997 (*P.H.*).) "But 'tribal ancestry is not among the criteria for having a reason to know the child is an Indian child.' (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885; accord *In re D. F.* (2020) 55 Cal.App.5th 558, 571 ['A suggestion of Indian ancestry is not sufficient under ICWA or related California law to trigger the notice requirement'].)" (*P.H.* at p. 997.)

"Some courts apply a straightforward substantial evidence test when reviewing the juvenile court's conclusion that ICWA does not apply. [Citation.] 'By contrast, other courts have used a hybrid standard, reviewing for substantial evidence whether there is reason to know a minor is an Indian child, and reviewing a finding of due diligence and proper inquiry for abuse of discretion.' [Citation.]" (*Dezi C., supra,* 16 Cal.5th at p. 1134.)

9

**B.    The Department Satisfied Its Further Inquiry Obligation**

Father contends the Department did not satisfy its further inquiry obligations because:  (1) it omitted information provided by PGM about minor's great-great-great-grandparents from the ICWA-030 Notices mailed to the tribes in March 2022; and (2) the juvenile court did not make any findings regarding the sufficiency of the Department's ICWA inquiry at the section 366.26 hearing in October 2024.

With respect to the first contention, Father focuses on the fact that in 2022 the Department mistakenly believed it could omit information about PGM's great-grandparents when it first completed the ICWA-030 Notices to informally communicate with the Cherokee and Blackfeet tribes, because the Department used an outdated form (revised on January 1, 2008).  The outdated notices did not include a space to provide "Information on Indian Ancestry of Other Lineal Biological Ancestors," whereas the updated and then current ICWA-030 Notice (revised on January 1, 2021) did provide for such information.  Despite the omission in its initial communication, and despite using the same outdated notice in September 2024 to informally communicate with the Blackfeet tribe, the Department's 2024 communications did include PGM's assertion that her Native American ancestry came from her great-great-grandfather W.A.

Father argues that the Department's failure to include the family reunion materials and information provided by PGM in March 2022 as part of its communication with the tribes meant that it did not satisfy its duty of further inquiry, which includes contacting the relevant tribe and "sharing information identified

by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination." (§ 224.2, subd. (e)(2)(C).) We reject father's argument. Neither ICWA nor Cal-ICWA identify the specific information necessary for a tribe to make a membership or citizenship eligibility determination, and there is no record evidence that, after receiving the informal communications from the Department in 2022 or 2024, any tribe requested additional information in order to determine minor's eligibility for tribal membership. In addition, so long as the Department reports contacting the relevant tribes, it is not required to document all the information shared with the tribe. (*In re H.M.* (2025) 109 Cal.App.5th 1171, 1184, review denied (July 9, 2025) [further inquiry statute "does not detail what specific documentation is required when conducting further inquiry"; *In re M.W.* (2020) 49 Cal.App.5th 1034, 1046 [statute "does not require that any extensive or particular formal documentation of ICWA inquiry be provided to the tribe"].)

With respect to father's contention regarding the absence of express ICWA findings at the section 366.26 hearing, the "juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 14) and an aggrieved party may appeal from a later proceeding even if no express ICWA determination is made (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1126–1127 [parents appealed from termination of parental rights, where court did not mention ICWA]). " ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily

11

becomes." ' " (*Dezi C., supra*, 16 Cal.5th at p. 1141.) On this record, there was sufficient evidence to support the juvenile court's implicit determination that the Department fulfilled its further inquiry obligations, regardless of whether we apply a substantial evidence or abuse of discretion standard of review. (See *Dezi C., supra*, 16 Cal.5th at p. 1134 [describing split authority on standard of review for ICWA error].)

## C. The Department Was Not Required to Provide ICWA Notice

Father contends the Department's September 2024 ICWA notices were insufficient to satisfy the requirements of section 224.3. Presumably relying on the August 2024 order the court made in response to a request by minor's counsel and with the Department's agreement to send notices to the Blackfeet Tribe, father argues that his and PGM's reports of Indian ancestry provided a reason to know minor was an Indian child, and therefore the appealed orders were based on insufficient evidence of the Department's compliance with formal notice requirements. We are unpersuaded by father's argument.

"[S]ection 224.2, subdivision (d) lists several instances creating a reason to know a child is Indian. These include that the child, a person having an interest in the child, any participant in the proceedings, an officer of the court, or a representative of a tribe indicates the child is Indian; the child resides on a reservation or has been a ward of a tribal court; or the child or parent has identification indicating tribal membership or citizenship." (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1099, fn. 3.)

12

We find nothing in the record to support father's contention that the Department had reason to know that minor was an Indian child based on the six circumstances set forth in section 224.2, subdivision (d).  To the contrary, PGM's great-grandfather's purported relationship with the Blackfeet tribe "*was not written at that time*", PGM herself had never registered with the tribe, and an enrollment liaison with the tribe confirmed that PGM, father, and minor were not enrolled or eligible for enrollment.  Although the court ordered the Department to provide notice to the Blackfeet tribe, it never found formal notice was required, and because there was no reason to know minor was an Indian child, notice to the tribe was not required.  (See, *P.H.*, *supra*, 98 Cal.App.5th at pp. 996–998 and fn. 3 [a claim of Indian ancestry that does not satisfy the circumstances outlined in section 224.2, subdivision (d) does not trigger the notice requirement, although the court and the Department "may at times decide it is advisable to provide notice to tribes as a prudential matter even when such notice is not statutorily required"].)

13

## DISPOSITION

The juvenile court's October 9, 2024 orders denying father's Welfare and Institutions Code section 388 petition, appointing a legal guardian, and terminating dependency jurisdiction are affirmed.

NOT TO BE PUBLISHED.


                                                    MOOR, J.

I CONCUR:


        KIM (D.), J.

In re E.G.
B341852


BAKER, Acting P. J., Concurring



      I concur the order under review should be affirmed.  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1141 [a "juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review"]; see also *id.* at 1153 (conc. opn. of Kruger, J.), 1168 (dis. opn. of Groban, J.); see also *In re J.W.* (2022) 81 Cal.App.5th 384, 390-391.)



      BAKER, Acting P. J.